626 S.E.2d 348

The STATE, Petitioner,

v.

Gerald MEANS, Respondent.

No. 26105.

Supreme Court of South Carolina.

Heard Nov. 1, 2005.

Decided Feb. 6, 2006.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, and Assistant Attorney General David A. Spencer, all of Columbia, and John R. Justice, of Chester, for Petitioner.

Acting Deputy Chief Attorney Wanda H. Carter, of the South Carolina Office of Appellate Defense, of Columbia, for Respondent.

Justice BURNETT:

We granted the State's petition for a writ of certiorari to review the Court of Appeals' reversal of the conviction of Gerald Means (Respondent) based on a lack of subject matter jurisdiction by the circuit court. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A county grand jury issued the following indictment against Respondent in March 2001:

INDICTMENT FOR CRIMINAL DOMESTIC VIOLENCE—AGGRAVATED

That Gerald Means did in Chester County on or about December 16, 2000, did [sic] commit an act of violence against one Natalie Flynn with whom he has two children.

Prior to Respondent's trial in August 2001, the solicitor moved to amend the indictment to ensure it properly alleged criminal domestic violence of a high and aggravated nature

(CDVHAN) by adding, in handwriting, the following empha-
sized phrase:

> That Gerald Means did in Chester County on or about
> December 16, 2000 did [sic] commit an act of violence
> against one Natalie Flynn with whom he has two children,
> *such act of violence being of a high and aggravated nature.*

The solicitor believed the indictment was defective as original-
ly issued and moved to amend it "prior to calling this case in
order to avoid any unfair surprise to [Respondent and his
counsel]." The solicitor further asserted the defect was mere-
ly a "clerical error" because the proposed amendment would
not alter the nature of the offense charged.

Respondent objected to the untimely amendment of the
indictment and noted the proposed change was in the charging
language. Asked by the trial judge whether Respondent was
prejudiced by the amendment, counsel stated "[w]e were
prepared for criminal domestic violence of a high and aggra-
vated nature, I have to admit that."

The trial judge granted the State's motion to amend the
indictment. Respondent subsequently was convicted of
CDVHAN and sentenced to nine years in prison.

■ A divided Court of Appeals vacated the conviction,
concluding the circuit court lacked subject matter jurisdiction
in the case due to the improper amendment of an insufficient
indictment. *State v. Means,* Op. No.2003–UP–633 (S.C. Ct.
App. filed October 23, 2003) (unpublished opinion). The ma-
jority reasoned the amendment changed the nature of the
offense charged, transforming it from a charge of criminal
domestic violence in which Respondent faced a maximum
sentence of thirty days into a charge of CDVHAN in which
the maximum sentence was ten years.[1] The majority noted

---

1. S.C.Code Ann. § 16–25–20 (2003) at the time of Respondent's trial
   provided:

   > It is unlawful to: (1) cause physical harm or injury to a person's own
   > household member; or (2) offer or attempt to cause physical harm or
   > injury to a person's own household member with apparent present
   > ability under circumstances reasonably creating fear of imminent
   > peril.

   S.C.Code Ann. § 16–25–30 (2003) at the time of Respondent's trial
   provided:

the offense of CDVHAN requires the State to prove an element not contained in a CDV charge, namely, at least one element of the common law crime of ABHAN.[2] The majority found that the term "aggravated" in the indictment caption was insufficient to uphold the validity of the amended indictment.

## ISSUE

Did the Court of Appeals err in vacating Respondent's conviction on the ground that the circuit court lacked subject matter jurisdiction in light of *State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005)?

## LAW AND ANALYSIS

The State contends the Court of Appeals erred in vacating Respondent's conviction in light of *Gentry*, which we decided

---

Any person who violates Section 16–25–20 is guilty of the misdemeanor of criminal domestic violence and, upon conviction, must be fined not more than five hundred dollars or imprisoned not more than thirty days.

S.C.Code Ann. § 16–25–65 (2003) at the time of Respondent's trial provided:

(A) The elements of the common law crime of assault and battery of a high and aggravated nature are incorporated in and made a part of the offense of criminal domestic violence of a high and aggravated nature when a person violates the provisions of Section 16–25–20 and the elements of assault and battery of a high and aggravated nature are present.

(B) A person who commits the crime of criminal domestic violence of a high and aggravated nature is guilty of a misdemeanor and, upon conviction, must be fined not more than three thousand dollars or imprisoned not more than ten years, or both.

(C) The provisions of this section create a statutory offense of criminal domestic violence of a high and aggravated nature and must not be construed to codify the common law crime of assault and battery of a high and aggravated nature.

Amendments of these statutes in 2003 and 2005 do not apply in Respondent's case.

2. Circumstances of aggravation include the infliction of serious bodily injury, great disparity in the ages or physical conditions of the parties, a difference in sexes, the purposeful infliction of shame and disgrace, taking indecent liberties or familiarities with a female, and resistance to lawful authority. *E.g. State v. Foxworth*, 269 S.C. 496, 238 S.E.2d 172 (1977).

after the Court of Appeals decided the present appeal. We agree.[3]

As we recently explained,

In *Gentry,* we abandoned the view that, in criminal matters, the circuit court acquires subject matter jurisdiction to hear a particular case by way of a valid indictment by either a county or state grand jury. Under the former approach, except for certain minor offenses, the circuit court did not have subject matter jurisdiction in a criminal case unless there was an indictment which sufficiently stated an offense, the defendant had waived presentment of the indictment to the grand jury, or the charge was a lesser included offense of the crime charged in the indictment. Under that former approach, a defective or insufficient indictment could result in a lack of subject matter jurisdiction, which is a matter that may be raised at any time, including on direct appeal, in a [post-conviction relief] action, or *sua sponte* by the trial or appellate courts.

In *Gentry,* taking our cue from the United States Supreme Court and in keeping with our view of subject matter jurisdiction in civil cases, we explained that the subject matter jurisdiction of the circuit court and the sufficiency of an indictment are two distinct concepts. "[S]ubject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong." *Gentry,* [363 S.C. at 100, 610 S.E.2d at 498]; *see also Pierce v. State,* 338 S.C. 139, 150, 526 S.E.2d 222, 227 (2000) (stating same principle); *Dove v. Gold Kist, Inc.,* 314 S.C. 235, 237–38, 442 S.E.2d 598, 600 (1994) (stating same principle); S.C. Const. art. V, § 11 ("The Circuit Court shall be a general trial court with original jurisdiction in civil and criminal cases, except those cases in which exclusive jurisdiction shall be given to inferior courts,

---

**3.** *See State v. Jones,* 312 S.C. 100, 439 S.E.2d 282 (1994) (new rule of criminal law should be applied retroactively to cases pending on direct review at the time the new decision is issued, unless the new rule results in a finding that the trial court acted without jurisdiction or the trial court's action is void because the defendant's conduct is not subject to criminal sanction, in which case the new rule should be fully retroactive and applied to all previous cases).

and shall have such appellate jurisdiction as provided by law.").

In *Gentry*, then, we returned to our earlier view that an indictment is a "notice document," albeit one required by our state constitution and statutes. *See* S.C. Const. art. I, § 11 and art. V, § 22 [footnote omitted]; S.C.Code Ann. § 17–19–10 (2003) ("[n]o person shall be held to answer in any court for an alleged crime or offense, unless upon indictment by a grand jury" except in specified instances). The primary purposes of an indictment are to put the defendant on notice of what he is called upon to answer, *i.e.*, to apprise him of the elements of the offense and to allow him to decide whether to plead guilty or stand trial, and to enable the circuit court to know what judgment to pronounce if the defendant is convicted. *Gentry*, [363 S.C. at 102–03, 610 S.E.2d at 500]; S.C.Code Ann. § 17–19–20 (2003). This required notice is a component of the due process that is accorded every criminal defendant. *See* U.S. Const. amend. V; S.C. Const. art. I, § 3. Given that the sufficiency of an indictment will no longer be considered an issue of subject matter jurisdiction which may be raised at any time, we applied the general rule regarding preservation of error and held that a defendant must raise an issue regarding the sufficiency of the indictment before the jury is sworn in order to preserve the error for direct appellate review. *Gentry*, [363 S.C. at 101, 610 S.E.2d at 499] (citing S.C.Code Ann. § 17–19–90 (2003)).

*Evans v. State*, 363 S.C. 495, 507–09, 611 S.E.2d 510, 516–17 (2005); *see also State v. Smalls*, 364 S.C. 343, 346–48, 613 S.E.2d 754, 756–57 (2005) (applying *Gentry* and *Evans* to hold that the circuit court had subject matter jurisdiction to accept a guilty plea where the defendant had not been indicted for the charge to which he pled guilty, but signed a sentencing sheet which constituted a written waiver of the right to have the charge presented to a grand jury and also signified the defendant had been notified of the charge to which he pled guilty).

■ We conclude, pursuant to *Gentry*, the Court of Appeals erred in finding the circuit court lacked subject matter jurisdiction in Respondent's case. An indictment which allegedly is improperly amended no longer raises a question of subject

matter jurisdiction; it instead raises a question of whether a defendant properly received notice he would be tried for a particular crime. We take this opportunity to explain how, post-*Gentry*, the State's pretrial motion to amend an indictment should be analyzed. The analysis remains largely the same as it was under pre-*Gentry* law, although it is now driven by concepts of notice and due process.

A defendant has a constitutional and statutory right to demand that a properly constituted grand jury consider his case and decide whether to issue a sufficient indictment. "The primary purposes of an indictment are to put the defendant on notice of what he is called upon to answer, *i.e.*, to apprise him of the elements of the offense and to allow him to decide whether to plead guilty or stand trial, and to enable the circuit court to know what judgment to pronounce if the defendant is convicted." *Evans,* 363 S.C. at 508–13, 611 S.E.2d at 517–19 (citing *Gentry,* 363 S.C. at 102–03, 610 S.E.2d at 500, and also citing cases in which the Court has emphasized the importance of the grand jury process). Furthermore, a sufficient indictment prevents later retrials for the same offense in contravention of the constitutional prohibition against double jeopardy and prevents a prosecutor from usurping the power of the grand jury by ensuring a defendant is tried for the crime for which he was indicted. *State v. Tabory,* 262 S.C. 136, 139, 202 S.E.2d 852, 853 (1974); *State v. Guthrie,* 352 S.C. 103, 108, 572 S.E.2d 309, 312 (Ct.App.2002), *overruled on other grounds, Gentry,* 363 S.C. 93, 610 S.E.2d 494; *People v. Grega,* 72 N.Y.2d 489, 534 N.Y.S.2d 647, 531 N.E.2d 279, 282 (1988); *State v. Lewis,* 36 S.W.3d 88, 97 (Tenn.Crim.App.2000). The sufficiency of an indictment is examined objectively, from the viewpoint of a reasonable person, and not from the subjective viewpoint of a particular defendant. This principle does not mean a defendant's understanding of an indictment is irrelevant; that understanding, or lack thereof, is a factor for the court to consider in its sufficiency determination. However, a defendant's purported lack of understanding of an indictment which is sufficient, when viewed objectively, ordinarily will not serve to defeat the sufficiency of the indictment.

In South Carolina, an indictment "shall be deemed and judged sufficient and good in law which, in addition to allegations as to time and place, as required by law, charges the

crime substantially in the language of the common law or of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood and, if the offense be a statutory offense, that the offense be alleged to be contrary to the statute in such case made and provided." S.C.Code Ann. § 17–19–20 (2003). Thus, an indictment passes legal muster when it charges the crime substantially in the language of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood. *State v. Shoemaker,* 276 S.C. 86, 275 S.E.2d 878 (1981); *Guthrie,* 352 S.C. at 107–08, 572 S.E.2d at 312.

■ "In determining whether an indictment meets the sufficiency standard, the court must look at the indictment with a practical eye in view of all the surrounding circumstances.... Further, whether the indictment could be more definite or certain is irrelevant." *Gentry,* 363 S.C. at 103, 610 S.E.2d at 500 (citations omitted). All the surrounding circumstances must be weighed to make an accurate determination of whether the defendant was prejudiced by a lack of notice and an insufficient indictment. *State v. Gunn,* 313 S.C. 124, 130, 437 S.E.2d 75, 78 (1993); *State v. Evans,* 216 S.C. 328, 57 S.E.2d 756 (1950).

■ While the court should focus primarily on charging language in the body of the indictment, a caption or title which is consistent with the language in the body of the indictment may be considered in conjunction with the body in determining the sufficiency of the indictment as a whole. *Thompson v. State,* 357 S.C. 192, 195, 593 S.E.2d 139, 140 (2004) (indictment was sufficient to charge the offense of criminal conspiracy where language in body of each indictment used verbs which implied defendant acted with another person, and title of each indictment cited the statute defining the offense), *overruled on other grounds, Gentry,* 363 S.C. 93, 610 S.E.2d 494; *State v. Wilkes,* 353 S.C. 462, 465, 578 S.E.2d 717, 719 (2003) (indictments stating that defendant assaulted officers while they were attempting to process him after arrest were sufficient; although body of the indictments failed to specify that officers were employees of correctional facility, language in the indictments was substantially same as language of statute defining offense charged, captions indicated victims were correctional facility employees or cited the statute defining offense, and

title of charge in body of indictments stated victims were correctional facility employees), *overruled on other grounds, Gentry,* 363 S.C. 93, 610 S.E.2d 494; *Tate v. State,* 345 S.C. 577, 581, 549 S.E.2d 601, 603 (2001) ("It is the body of the indictment rather than the caption that is important. If the body specifically states the essential elements of the crime and is otherwise free from defect, defect in the caption will not cause it to be invalid."); *State v. Tabory,* 262, S.C. 136, 141, 262 S.C. 136, 202 S.E.2d 852, 854 (1974) ("the State may not support a conviction for an offense intended to be charged by relying upon a caption to the exclusion of the language contained in the body of the indictment").

When a defendant timely objects to the sufficiency of the indictment, before the jury is sworn, a ruling that an indictment is not sufficient will result in the quashing of the indictment unless the defendant waives presentment to the grand jury and pleads guilty. The solicitor ordinarily will be free to later submit a properly drafted indictment to the grand jury for its consideration. *Cutner v. State,* 354 S.C. 151, 155, 580 S.E.2d 120, 122–23 (2003), *overruled on other grounds, Gentry,* 363 S.C. 93, 610 S.E.2d 494; *Hopkins v. State,* 317 S.C. 7, 10, 451 S.E.2d 389, 390 (1994), *overruled on other grounds, Gentry,* 363 S.C. 93, 610 S.E.2d 494; *cf. Evans,* 363 S.C. at 510–13, 611 S.E.2d at 518–19 (indictment must be quashed when defendant timely objects to indictment issued by a grand jury which is established or constituted illegally, or when defendant timely proves disqualification of individual grand juror).

A defendant may waive a potential challenge to an indictment, just as he may waive any of his constitutional rights, by failing to raise the issue or by admitting the sufficiency of a particular indictment. *Cf. Rivers v. Strickland,* 264 S.C. 121, 124, 213 S.E.2d 97, 98 (1975) (defendant may waive right to assert various statutory and constitutional rights, nonjurisdictional defects, and defenses by pleading guilty); *TNS Mills, Inc. v. S.C. Dept. of Revenue,* 331 S.C. 611, 617, 503 S.E.2d 471, 474 (1998) (an issue conceded in lower court may not be argued·on appeal).

Amendments to an indictment are permissible if: (1) they do not change the nature of the offense; (2) the charge is a lesser included offense of the crime charged in the

indictment; or (3) the defendant waives presentment to the grand jury and pleads guilty. *State v. Myers*, 313 S.C. 391, 438 S.E.2d 236 (1993); S.C.Code Ann. § 17–19–100 (2003) (trial court "may amend the indictment . . . if such amendment does not change the nature of the offense charged").[4]

When the State moves before trial to amend an indictment previously issued or "true-billed" by the grand jury, the court first should determine whether the existing indictment is sufficient to place the defendant on notice of a particular offense, and identify the nature of that offense. Second, the court should determine whether the amended indictment would be sufficient to place the defendant on notice of a particular offense and, if so, identify the nature of that offense.

Third, the court should determine whether the proposed amendment changes the nature of the offense set forth in the original indictment. If it does, the motion to amend must be denied unless the amended indictment states a lesser included offense of the crime charged in the original indictment or the defendant chooses to waive presentment of the amended indictment to the grand jury and plead guilty. To rule otherwise would violate the defendant's statutory and constitutional right to demand that a properly constituted grand jury consider his case and decide whether to issue a sufficient indictment. *See e.g. Cutner*, 354 S.C. 151, 580 S.E.2d 120 (reversing conviction for possession with intent to distribute marijuana

---

4. The second sentence of Section 17–19–100 states: "After such amendment the trial shall proceed in all respects and with the same consequences as if the indictment had originally been returned as so amended, unless such amendment shall operate as a surprise to the defendant, in which case the defendant shall be entitled, upon demand, to a continuance of the cause." In a pre-*Gentry* case, we observed that "[t]he appropriate analysis is whether the amendment to the indictment changed the nature of the offense charged, not whether the amendment in any way surprised or prejudiced appellant." *State v. Lynch*, 344 S.C. 635, 641, 545 S.E.2d 511, 514 (2001), *overruled on other grounds*, *Gentry*, 363 S.C. 93, 610 S.E.2d 494. The second sentence of the statute applies only to *permissible* amendments, *i.e.*, those which do not change the nature of the offense charged. *Id.* at 641 n. 3, 545 S.E.2d 511, 545 S.E.2d at 514 n. 3 (emphasis in original). Therefore, this continuance provision will not be applied to deprive a defendant of the right to presentment when the court determines an existing indictment fails to give the required notice to the defendant or is otherwise insufficient pursuant to *Gentry*.

within proximity of a school because substituting a school for the church named in the original indictment was not a scrivener's error, but changed the nature of the offense charged); *State v. Lynch,* 344 S.C. 635, 641, 545 S.E.2d 511, 514 (2001) (reversing conviction where trial court, with regard to first-degree burglary indictment, allowed aggravating circumstance to be changed from entering during the darkness to causing physical injury; amendment changed the nature of the offense charged because proof required for each aggravating circumstance was materially different), *overruled on other grounds, Gentry,* 363 S.C. 93, 610 S.E.2d 494; *Weinhauer v. State,* 334 S.C. 327, 513 S.E.2d 840 (1999) (granting post-conviction relief where prosecutor verbally amended indictment for second-degree burglary to state that the burglary occurred at night-time; amendment changed the nature of the offense charged by changing the classification from nonviolent to violent), *overruled on other grounds, Gentry,* 363 S.C. 93, 610 S.E.2d 494; *Clair v. State,* 324 S.C. 144, 478 S.E.2d 54 (1996) (affirming grant of post-conviction relief where defendant was indicted for trafficking in cocaine weighing more than 100 grams and less than 200 grams, and defense counsel consented to an amendment of the indictment to an amount more than 200 grams, which changed the nature of the offense charged by increasing the penalty); *Hopkins v. State,* 317 S.C. 7, 10, 451 S.E.2d 389 (1994) (granting post-conviction relief and new trial where original indictment for felony DUI causing great bodily injury was amended to indictment for felony DUI causing death; amendment, which increased potential penalty from ten to twenty-five years, changed the nature of the offense charged), *overruled on other grounds, Gentry,* 363 S.C. 93, 610 S.E.2d 494.

On the other hand, amendments usually are permitted for purposes of correcting an error of form, such as a scrivener's or clerical error. *Cutner,* 354 S.C. at 155, 580 S.E.2d at 122. Thus, a motion to amend an indictment should be granted when the proposed amendment does not change the nature of the offense or affect the sufficiency of the indictment. *See e.g. State v. Batson,* 261 S.C. 128, 132, 198 S.E.2d 517, 519 (1973) (upholding amendment of indictment to state name of law enforcement officer who allegedly bought illegal drugs from defendant where original indictment identified the officer only as an "undercover SLED agent"); *State v.*

*Quarles,* 261 S.C. 413, 416–17, 200 S.E.2d 384, 385–86 (1973) (indictment may be amended to state the correct time or date of the alleged crime when time or date is not of the essence of the crime); *State v. Jones,* 211 S.C. 319, 45 S.E.2d 29 (1947) (amending indictment to correct the victim's name is a scrivener's error and does not change the nature or grade of the offense charged; defendant was neither misled nor prejudiced in his defense on the merits); *State v. Horton,* 209 S.C. 151, 39 S.E.2d 222 (1946) (upholding amendment of indictment to strike out inapplicable charge of common-law rape, where remaining language charged statutory rape of minor; amendment did not change the nature of the offense charged and defendant was not prejudiced in his defense on the merits).

In applying the above principles in this case, we conclude the body and caption of the original indictment, when examined with a practical eye in view of all the surrounding circumstances, provided adequate notice to Respondent that he faced a charge of CDVHAN. The law proscribed only two forms of criminal domestic violence—non-aggravated and CDV of a high and aggravated nature. *See* footnote 1. The caption of the indictment stated the offense was "aggravated," indicating CDVHAN, and this caption was consistent with charging language in the body of the indictment. *See Thompson,* 357 S.C. at 195, 593 S.E.2d at 140; *Wilkes,* 353 S.C. at 465, 578 S.E.2d at 719. The indictment was sufficient to apprise Respondent of the elements of the offense, the circuit court knew what judgment to pronounce in the event of conviction, and Respondent was ensured the protections of double jeopardy. Accordingly, the amendment of the indictment proposed by the solicitor and approved by the judge, as well as Respondent's statement he was prepared to defend a charge of CDVHAN, were both superfluous and of no import in this case.

## CONCLUSION

We reverse the decision of the Court of Appeals and affirm Respondent's conviction for CDVHAN.

**REVERSED.**

TOAL, C.J., WALLER, PLEICONES, J.J., and Acting Justice DIANE SCHAFER GOODSTEIN, concur.